IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                 CV 16-632 RB/WPL
                                                  CR 12-1486 RB

JASON LEWIS GRESHAM,

        Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

This matter is before me on Jason Gresham's Motion Under 28 U.S.C. § 2255 and *Johnson v. United States*, 135 S. Ct. 2551 (2015), to vacate, set aside, or correct sentence (CV Doc. 1, 9; CR Doc. 42, 50).[1] In 2012, Gresham pled guilty to two counts of being a felon in possession of firearms and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Doc. 37 at 2.) Gresham's base offense level was increased, in part on the basis that his prior conviction for aggravated burglary under New Mexico law constituted a "crime of violence" under U.S.S.G. § 4B1.2(a) and therefore qualified Gresham, along with an undisputed conviction for a drug offense, for a base offense level 24 based on U.S.S.G. § 2K2.1(a)(2). (Docs. 50, 51.) Gresham now contends that his conviction for New Mexico aggravated burglary no longer qualifies as a "crime of violence" pursuant to *Johnson*. Because I find that the collateral attack waiver in Gresham's plea agreement is both applicable and enforceable, I recommend that the Court deny Gresham's motion.

---

[1] All citations to "CV Doc." refer to documents filed in the civil case, CV 16-632 RB/WPL. All citations to "CR Doc." refer to documents filed in the criminal case, CR 12-1486 RB. Documents filed in both cases are cited by reference to the corresponding document in the criminal case.

**BACKGROUND**

Pursuant to a plea agreement, Gresham pled guilty to Count 1, for being a felon in possession of ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and Count 2, for being a felon in possession of firearms and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Doc. 37.) As part of the plea agreement, Gresham agreed to accept a sentence within the advisory guideline range and agreed not to seek a downward departure or variance. (*Id.* at 3.) In exchange for his guilty plea, Gresham received a three-level reduction to his guidelines offense level and the United States agreed not to bring additional criminal charges arising out of the facts that formed the basis for the criminal case. (*Id.* at 5-6.) As part of the deal, Gresham waived his appeal rights. (*Id.* at 6.) The waiver reads, in its entirety:

> The defendant is aware that 18 U.S.C. § 1291 and 18 U.S.C. § 3742 afford a defendant the right to appeal a conviction and the sentence imposed. Acknowledging that, the defendant knowingly waives the right to appeal this conviction and any sentence, including any fine, at or under the maximum statutory penalty authorized by law. In addition, the defendant agrees to waive any collateral attack on this conviction pursuant to 28 U.S.C. § 2255, except on the issue of counsel's ineffective assistance in negotiating or entering this plea or this waiver.

(*Id.*)

Each charge carried a penalty of up to ten years' incarceration, a $250,000 fine, up to three years of supervised release, and a $100 special penalty assessment. *See* Presentence Investigation Report ("PSR") at 1.

The United States Probation Officer calculated Gresham's offense level as follows: base offense level of 24 for "an offense involving unlawfully possessing firearms and ammunition after obtaining at least two felony convictions for either a crime of violence or a controlled substance offense," pursuant to U.S.S.G. § 2K2.1; two-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(1)(A) because the instant offense involved three firearms; and a total decrease of

three levels for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1.(a),(b). PSR at 6-7. Therefore, the Probation Officer calculated Gresham's guideline offense level as a level 23.

The Probation Officer calculated Gresham's criminal history category as follows, with all convictions arising under New Mexico law: three points for a 1994 conviction for aggravated burglary; three points for a 2000 conviction for possession of marijuana with intent to distribute, and distribution of a controlled or counterfeit substance; one point for a 2005 conviction for possession of drug paraphernalia and driving on a suspended or revoked license; and three points for a 2006 conviction for possession of a firearm or destructive device by a felon, possession of a drug precursor, and possession of drug paraphernalia. *Id.* at 7-12. The PSR detailed additional arrest and charging history, but did not assign criminal history points for any additional conduct. The total criminal history score of ten resulted in a criminal history category of V. *Id.* at 12.

Based on a total offense level of 23 and a criminal history category of V, the Probation Officer calculated Gresham's guideline range as 84 to 105 months' imprisonment.

Had Gresham's guidelines' calculation not considered the aggravated burglary conviction to be a crime of violence, Gresham's base offense level would have been level 20, pursuant to U.S.S.G. § 2K2.1(a)(4)(A). Gresham would still have received the two-level enhancement U.S.S.G. § 2K2.1(b)(1)(A) because the instant offense involved three firearms, and the three-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1.(a), (b). Absent the prior conviction for a crime of violence, Gresham's adjusted offense level would have been level 19. The criminal history category computation would remain the same because criminal history category is based on each prior sentence of imprisonment, not on how the convictions are classified. *See* U.S.S.G. § 4A1.1(a), (b). With an offense level of 19 and criminal history category of V, Gresham's guideline range would have been 57 to 71 months' imprisonment.

3

**DISCUSSION**

Gresham argues that his conviction for aggravated burglary under New Mexico law no longer qualifies as a crime a violence for purposes of U.S.S.G. § 4B1.1, and therefore cannot be used to enhance his sentence pursuant to U.S.S.G. § 2K2.1(a)(2). But-for the aggravated burglary conviction being considered a crime of violence, Gresham's guidelines range would have been 61-72 months' incarceration. Gresham contends that *Johnson* is retroactively applicable in guidelines cases, applies to his case, and renders his sentence unconstitutional.

A court must conduct a hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also United States v. Lopez*, 100 F.3d 113, 119 (10th Cir. 1996). Under this standard, "the petitioner bears the burden of alleging facts which, if proved, would entitle him to relief." *Hatch v. Oklahoma*, 58 F.3d 1447, 1457 (10th Cir. 1995) (quotation omitted), *overruled on other grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001) (en banc). Accordingly, if the prisoner alleges facts which, if believed, cannot be grounds for relief, there is no need for a hearing. *Id.* Additionally, the petitioner's "allegations must be specific and particularized; conclusory allegations will not suffice to warrant a hearing." *Id.* (citation and internal punctuation omitted). If the claims relate to occurrences in the courtroom or evidence in the record, then the Court need not conduct a hearing. *Machibroda v. United States*, 368 U.S. 487, 494-95 (1962).

Because the record alone establishes that Gresham's § 2255 motion should be denied, I did not hold an evidentiary hearing in this matter.

There are, essentially, two issues: 1) whether this motion falls within Gresham's waiver of collateral attack and therefore applies; and 2) if the waiver applies, whether it is enforceable.

For the purpose of resolving this motion, I assume without deciding that *Johnson* is retroactively applicable in guidelines cases and that Gresham's prior conviction for aggravated burglary would no longer qualify as a crime of violence. Even with these assumptions, I recommend that the Court conclude that this motion falls within Gresham's waiver, the waiver applies, and the waiver is enforceable.

### 1. The Waiver Applies

In *United States v. Hahn*, 359 F.3d 1315 (10th Cir. 2004), the Tenth Circuit laid out a two-part analysis used to determine whether a waiver is applicable: "(1) whether the disputed appeal falls within the scope of the waiver . . . ; (2) whether the defendant knowingly and voluntarily waived his appellate rights." *Id.* at 1325. *Hahn* included a third factor for determining whether an appellate waiver is enforceable: "whether enforcing the waiver would result in a miscarriage of justice" as defined by the Tenth Circuit. *Id.* This factor speaks to enforceability, rather than applicability, and is therefore discussed in the next section.

When determining the scope of a waiver, the waiver clause in a plea agreement is strictly construed, with all ambiguities resolved against the government. *Id.* (citing *United States v. Andis*, 333 F.3d 886, 890 (8th Cir. 2003) (en banc); *United States v. Chavez-Salais*, 337 F.3d 1170, 1173 (10th Cir. 2003)). To determine whether a waiver was knowing and voluntary, courts first "examine whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily," and second look for an adequate plea colloquy pursuant to Federal Rule of Criminal Procedure 11. *Id.* (citing *Andis*, 333 F.3d at 890-91; *Chavez-Salais*, 337 F.3d at 1173).

In this case, Gresham brought a collateral attack pursuant to 28 U.S.C. § 2255 and has not alleged that he received ineffective assistance of counsel in negotiating or entering the waiver or the plea agreement. Therefore, this case falls squarely within the plain terms of the waiver.

As to voluntariness, Gresham pled guilty before United States Magistrate Judge Lourdes A. Martinez in Las Cruces, New Mexico, on October 25, 2012. (Doc. 38.) Gresham acknowledged receipt of the indictment and agreed that he had plenty of time to discuss the plea agreement with his lawyer, and that all of his questions had been answered. (*Id.*) Gresham answered questions about his age, education, and physical condition, and was advised of his constitutional rights. (*Id.*) Gresham agreed that he fully understood the charges, the terms of his plea agreement, and the consequences of entering a guilty plea, and then pled guilty. (*Id.*) Gresham admitted the elements of the charges to which he pled guilty. (*Id.*) Judge Martinez then found that Gresham was capable of entering an informed plea and that his plea was knowing and voluntary. (*Id.*) Judge Martinez accepted Gresham's plea of guilty, adjudged Gresham guilty, and deferred acceptance of the plea agreement to the district judge. (*Id.*) This plea colloquy is adequate under Federal Rule of Criminal Procedure 11. *See Hahn*, 359 F.3d at 1326-27.

The collateral attack waiver satisfies both *Hahn* factors: the instant motion falls squarely within the plain language of the waiver, and Gresham was afforded an adequate plea colloquy. I recommend that the Court conclude that Gresham's motion falls within the waiver and that the waiver applies.

   2. **The Waiver is Enforceable**

Because I conclude, and recommend that the Court likewise concludes, that Gresham's motion falls within the waiver and that the waiver applies, I must determine whether the waiver is enforceable under the circumstances. I conclude, and recommend that the Court concludes,

that the waiver is enforceable because the district court did not rely on any impermissible factor, Gresham received the effective assistance of counsel when negotiating the waiver, Gresham's sentence does not exceed the statutory maximum, and the waiver is not otherwise unlawful and does not detract from the integrity of these proceedings.

As previously noted, *Hahn* requires courts to consider "whether enforcing the waiver would result in a miscarriage of justice" as defined by the Tenth Circuit. *Id.* at 1325. That is, courts must determine whether enforcing the waiver will result in a miscarriage of justice, meaning that "the district court relied on an impermissible factor such as race, . . . [the defendant received] ineffective assistance of counsel in connection with the negotiation of the waiver [which] renders the waiver invalid, . . . the sentence exceeds the statutory maximum, or . . . the waiver is otherwise unlawful." *Id.* at 1326 n.6 (quoting *Andis*, 333 F.3d at 901). To be "otherwise unlawful," the error must "'seriously affect the fairness, integrity or public reputation of judicial proceedings.'" *Id.* at 1327 (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)) (internal alterations omitted). That is, a waiver does not apply if the district court committed plain error in calculating the sentence. *See generally Olano*, 507 U.S. at 732-34.

Gresham does not—nor could he—argue that the district court relied on an impermissible factor to craft his sentence and does not argue that he received ineffective assistance in connection with negotiating the waiver. Further, the statutory maximum sentence in Gresham's case was ten years' incarceration, 18 U.S.C. § 924(a)(2), and Gresham was sentenced to seven years' incarceration. Therefore, Gresham's only argument that upholding his sentence would constitute a miscarriage of justice must come under the fourth, and most amorphous, option: that the waiver is otherwise unlawful and seriously affects the fairness, integrity, or public reputation of judicial proceedings.

Gresham argues that the Tenth Circuit held in *United States v. Madrid*, 805 F.3d 1204 (10th Cir. 2015), that it constituted a miscarriage of justice when a defendant was sentenced under the residual clause of U.S.S.G. § 4B1.2, after *Johnson* was decided. *Id.* at 1211. The defendant in *Madrid* did not enter into a plea agreement. When deciding *Madrid*, the Tenth Circuit did not have cause to determine whether *Johnson* applied retroactively to the guidelines and did not confront the issue of whether or how *Johnson* impacted previously entered collateral attack waivers.

The Tenth Circuit did, however, confront a similar problem in *United States v. Porter*, 405 F.3d 1136 (10th Cir. 2005), when it considered whether a subsequent change in the law rendered a defendant's waiver unenforceable. *Id.* at 1144. In *Porter*, the Tenth Circuit noted that other circuits had already rejected claims that the change wrought by *United States v. Booker*, 543 U.S. 220 (2005)—that is, the sentencing guidelines went from being mandatory to advisory—did not invalidate otherwise lawful plea agreements. 405 F.3d at 1145 (citing *United States v. Sahlin*, 399 F.3d 27, 31 (1st Cir. 2005); *United States v. Bradley*, 400 F.3d 459, 463-66 (6th Cir. 2005)).

"[C]riminal defendants may waive both rights in existence and those that result from unanticipated later judicial determinations." *Id.* at 1144 (citing *Brady v. United States*, 397 U.S. 742, 757 (1970)). "[A] voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable just because later judicial decisions indicate that the plea rested on a faulty premise." *Brady*, 397 U.S. at 757; *see also United States v. Ruiz*, 536 U.S. 622, 630 (2002).

Under this reasoning, the Tenth Circuit found that "the change *Booker* rendered in the sentencing landscape does not compel us to hold Porter's plea agreement unlawful." *Porter*, 405

8

F.3d at 1145. It is worth noting that *Porter* arose on direct appeal, rather than collateral attack. Indeed, *Porter* was pending on direct appeal when *Booker* was decided. *Id.* Nonetheless, the analysis remains the same: "[t]he essence of plea agreements . . . is that they represent a bargained-for understanding between the government and criminal defendants in which each side foregoes certain rights and assumes certain risks in exchange for a degree of certainty as to the outcome of criminal matters. One such risk is a favorable change in the law." *Id.*

I find that the same logic applies in this case. Additionally, enforcement of Gresham's plea agreement does not seriously affect the fairness, integrity, or public reputation of judicial proceedings. Gresham's plea agreement made clear that he faced a 10-year maximum sentence for the charged conduct, that he gave up multiple constitutional and appellate rights in exchange for concessions from the government, and that he would be sentenced in accordance with the guidelines then in effect. The sentence imposed by the district court conformed with the terms of that agreement and the understanding expressed by Gresham at the plea hearing. Gresham faced up to 120 months under the statute and received a sentence of 84 months. I find Gresham's argument without merit.

## CONCLUSION

I recommend that the Court conclude that this motion falls within the scope of Gresham's waiver of collateral attack, that the waiver applies, and that the waiver is enforceable. Based on this, I recommend that the Court deny Gresham's motion and dismiss this case. However, I recommend that the Court grant a Certificate of Appealability pursuant to 28 U.S.C. § 2253(c).

> **THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

*William P. Lynch*
WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.